NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DUQUESNE ELECTRIC AND MANU-
FACTURING COMPANY,
Respondent.

No. 74–1989.

United States Court of Appeals,
Third Circuit.

Argued April 18, 1975.

Decided June 13, 1975.

As Amended June 30, 1975.

Michael Messitte, N. L. R. B., Washington, D. C., for petitioner.

Timothy P. O'Reilly, Bridgeville, Pa., for respondent.

Before SEITZ, Chief Judge, and MARIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

MARIS, Circuit Judge.

The National Labor Relations Board petitions this court to enforce its order of June 28, 1974, 212 NLRB No. 8, against the Duquesne Electric and Manufacturing Company (hereinafter designated the Company) pursuant to section 10(e) of the National Labor Relations Act, as amended by section 101 of the Labor Management Relations Act, 29 U.S.C.A. § 160(e). The Board determined that the Company violated section 8(a)(1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a)(1), by discharging employees, Melanie R. Casey, Sharon McGaughey and Debbie Hart, for engaging in concerted activities protected by section 7 of the Act, as amended, 29 U.S.C.A. § 157, and ordered the Company to cease and desist from the unlawful acts and to reinstate those employees to their former jobs or substantially equivalent positions, with back pay. In opposition to our enforcement of the Board's order, the Company urges that the case should be remanded to the administrative law judge by whom it was initially heard for redetermination of his credibility findings in the light of erroneously rejected evidence and of an affidavit by McGaughey production of which was refused and that alternatively this court should deny the Board's petition on the ground that the employee activities in question are not protected under the Act.

The testimony elicited at the hearing before the administrative law judge may be summarized as follows. The Company rebuilds and sells electrical equipment and employed, immediately prior to June 6, 1973, at its Etna, Pennsylvania plant and adjacent offices, nine executives and administrators, including Robert J. Casey, the Company's sole owner and chairman of its board of directors, 35 production and maintenance employees represented by the International Union of Electrical, Radio and Machine Workers, Local 643, AFL–CIO–CLC, and four office workers not represented by any union—Melanie Casey, hired in 1969, Connie Devine, hired in 1971, Sharon McGaughey, hired in July 1972 and Debbie Hart, hired in September 1972.

In December of 1972 the four office workers had discussed among themselves their dissatisfaction with wages and certain office conditions. In April 1973 they made their complaints known to Clyde Giegel, Vice-President of Sales, who advised them to organize their complaints and submit them, together, to Casey. Melanie was delegated to present their grievances to Casey which she did in his office on May 29th. Casey listened to the complaints and recommendations and asked Melanie to put them in writing. Melanie immediately typed a list of six requests giving the original to Casey and a copy to McGaughey. Casey took the memorandum, read it and promised to reach a decision concerning it on June 1st, but on that date he postponed any answer until the following week.

On June 6th Melanie again approached Casey. Melanie testified, and her version of the June 6th interview substantially differs from Casey's, that when she inquired whether Casey had reached a decision, he replied, "I have and I haven't." When Melanie said she didn't understand his answer, Casey replied that, as owner of the Company, he owed her no explanation and "If you don't like the way I run things around here, you can get the hell out." Casey called Hart, McGaughey and Devine into his office and, after ascertaining that Melanie spoke for all of them, repeated the

words quoted above to each of them, adding that they should not expect a job recommendation from him. As the four employees gathered their belongings in their various offices, the telephone rang. Melanie testified she called out, "Don't pick it up. You've been fired." The administrative law judge believed that Casey and Giegel probably heard these words, which they denied hearing. Before leaving, the four said goodby to Giegel, Vice-President Brenza and Secretary-Treasurer Hess. These executives testified they did not ask why the four were leaving en masse.

The next morning the four office workers picketed outside the plant and sympathizing production and maintenance workers also remained outside. Union officials, present to urge the men to go back to work, were commissioned by the four picketing employees to ask Casey if he would not reconsider his position. Casey refused. On June 11th each of the four signed a letter prepared by the Union and sent to Casey applying for unconditional reinstatement. Debbie Hart corroborated Melanie's account of the June 6th meeting. However, the Company sought to impeach Hart's testimony with a prehearing affidavit in which she had stated that she would not have returned to work "if our demands weren't met", a statement contrary to her testimony and her June 11th letter to Casey. Also, as bearing on Hart's credibility, the Company pointed to her testimony on cross-examination that her endorsement of a final paycheck, although identical to that of Melanie's was not the product of consultation between them.

Casey, testifying for the Company, denied that he fired the officer workers. He testified that early in the interview he reminded Melanie that she had received nine pay increases in her three and one-half years with the Company and that she had already taken twenty-one days off from work that year. He stated that Melanie then raised her voice and demanded an answer to her requests. When Casey asked what she would do if he refused, he stated that she replied, "We intend to quit." The others were sent for and when they agreed that they would quit if an immediate answer to their requests was not given, Casey told them they could leave. Casey testified he then left the building. Corroborating Casey's testimony, Secretary-Treasurer Hess testified that while seated at his desk in his office, he heard the words, "I quit", coming from Casey's office directly across the hall at the time of the June 6th interview, and that shortly thereafter Casey entered Hess's office and told him the girls had quit.

On the principal issue of whether the four employees quit or were fired, the administrative law judge credited Melanie Casey and Debbie Hart and found, on the basis of their testimony and subsequent events, that the employees were reasonably led to believe that they were discharged, which belief was not in any way dispelled by Casey, although he was aware of their state of mind and that, therefore, they were directly or constructively discharged on June 6th. It appears that the administrative law judge made his findings after having rejected as evidence, and accordingly without having considered, decisions made by the Pennsylvania Bureau of Employment Security and affirmed by the Pennsylvania Unemployment Compensation Board of Review that the four office workers had voluntarily quit their jobs or the statement of Devine, who was not a charging party, on her application for unemployment benefits that her reason for separating from her employer was, "Quit— Employer refused to bargain in good faith." Upon considering the Company's exceptions to the administrative law judge's report and order, the Board agreed with the Company that this evidence had been erroneously rejected since the decision of a state unemployment compensation agency may be judicially noticed, although it is not controlling. The Board itself did consider this evidence, however, but found it insufficient to overcome the other factors relied on by the administrative law judge

to find a violation of the Act. The Board specifically stated in a footnote to its decision that after careful examination of the record it found no basis for reversing the administrative law judge's finding that the employees had been discharged in violation of the Act and that it was its policy not to disturb credibility findings made by an administrative law judge unless the "clear preponderance of all the relevant evidence convinces us that the resolutions are incorrect."

■ Our review of the record satisfies us that there is in it substantial evidence which, if credited, as it was by the Board, supports the findings upon which the order sought to be enforced was predicated. Indeed the Company has not asserted the contrary before us. The Company, of course agrees that the Board was right in overruling the administrative law judge's exclusion of the Pennsylvania Bureau of Employment Security records, including Devine's application for unemployment benefits, and in admitting that evidence into the record. Its sole contention in this regard is that it was beyond the power of the Board itself to determine the sufficiency of the evidence as a whole, including the originally excluded evidence, to support the judge's findings since that determination involved an appraisal by the Board of the credibility of witnesses on the basis of a record which included evidence that the judge had not considered. The Company strongly urges that the Board should instead have referred the case back to the judge for reconsideration of his credibility findings in the light of all the evidence which is now in the record.

■ We do not agree. Section 10(c) of the Act, as amended, 29 U.S.C.A. § 160(c), expressly provides that, after having referred a case to an agent, such as a hearing examiner or administrative law judge, who is authorized to conduct a hearing and after having received back the transcript of the testimony taken by him, the Board may take further testimony and "upon the preponderance of the testimony taken . . . the Board shall state its findings of fact."

Under this clear statutory authority it is the Board itself which is responsible for determining the facts and not its trial examiner or administrative law judge. *Standard Dry Wall Products, Inc.,* 1950, 91 N.L.R.B. 544, *enforced,* 3d Cir., 188 F.2d 362. The administrative law judge's findings and recommendations, when contested, become merely advisory, and the Board itself makes an original disposition of the case. *N.L.R.B. v. Stocker Manufacturing Co.,* 3d Cir. 1950, 185 F.2d 451, 453. Thus the Board is not bound to follow an administrative law judge's findings even though they are not clearly erroneous. *Universal Camera Corp. v. N.L.R.B.,* 1951, 340 U.S. 474, 492, 71 S.Ct. 456, 95 L.Ed. 456, but may decline to follow such a judge's finding even as to the credibility of a witness who testified before him and make a contrary finding on the subject if its determination is supported by substantial evidence. *N.L.R.B. v. Treasure Lake, Inc.,* 3d Cir. 1971, 453 F.2d 202, 204. Moreover, it has been held that the Board is entitled in making such a determination to consider additional evidence which it may have received. *United Steelworkers of America AFL–CIO v. N.L.R.B.,* 1967, 128 U.S.App.D.C. 344, 386 F.2d 981. In the case just cited the Court of Appeals upheld the reversal by the Board, on the basis of new documentary evidence, of a finding of credibility by a hearing officer with respect to a witness who had testified before him saying:

"The Board's evaluation of the new evidence did not require personal observation of the demeanor of the witness whose credibility the Board found was undermined by this evidence. Nor was the Board required to return the case to the Trial Examiner for his appraisal of the record as augmented." 386 F.2d 981 at 983.

The power of the Board to reject credibility findings by an administrative law judge on the basis of substantial evidence, some of which was not before the judge, surely includes the power to accept and adopt the judge's findings on

the same basis, as the Board did here. In doing so in the present case it did not exceed its authority.

 The Company further complains of the refusal of the administrative law judge to order the general counsel of the Board to produce a prehearing affidavit made by Sharon McGaughey, one of the clerical employees alleged to have been discharged, whom the Company had called to testify under Rule 43(b) [1] FRCP as an adverse party. McGaughey was not in fact a charging party in this proceeding but she was a discriminatee and doubtless an unwilling or hostile witness. Rule 43(b) was, therefore, applicable. The contention of counsel for the Company is that the refusal to order production of McGaughey's affidavit interfered with the right to cross-examine her which the rule gave him. It is clear, however, that counsel has misconceived his rights under the rule.

Rule 43(b) did not give counsel the right to cross-examine McGaughey, but merely to use leading questions in conducting his direct examination of her as a witness called by him. It was for the general counsel of the Board to cross-examine her if he desired to do so, after her direct examination by the Company's counsel had been completed. If, as appears, counsel desired the affidavit for the purpose of impeaching McGaughey as a witness, assuming that she was an adverse party impeachable under the rule, he had no need for it, and was, therefore, not entitled to it, until she had given testimony damaging to the Company's case, which she never did. The Board has so construed section 102.118(b)(1) of its Rules and Regulations, 29 C.F.R. § 102.118(b)(1), which permits the production for the use of the opposing party of statements of witnesses called by the general counsel of the Board. *Kenrich Petrochemicals, Inc.*, 1964, 149 N.L.R.B. 910, 911 n.2. We see no error in the administrative law judge's refusal to order the production of McGaughey's affidavit in this case.

Finally, the Company urges that the activity in question in this case represented merely an effort by Melanie to create an executive position, that of office manager, for herself and was, therefore, not a protected activity under the Act. It is sufficient as to this to say that the uncontradicted evidence amply supports the finding that in an effort to improve their working conditions the four employees involved organized and delegated Melanie to be their spokesman and that Casey, when he terminated their employment, knew of the involvement of all four employees in the requests made by Melanie. These were clearly concerted activities within the meaning and protection of the Act.

A judgment enforcing the order of the National Labor Relations Board will be entered.

---

1. Rule 43(b) has been superseded, effective July 1, 1975, by Rule 611(c), Federal Rules of Evidence.